UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JARLINE ALMODOVAR,

                          Plaintiff,                              **OPINION AND ORDER**

            -against-                                             23-cv-9353 (AEK)

WAL-MART STORES EAST, LP,
WALMART, INC., and WALMART
SUPERCENTER STORE #1959,

                          Defendants.
------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

      Plaintiff Jarline Almodovar brings this action against Defendants Wal-Mart Stores East,

LP, Walmart, Inc., and Walmart Supercenter Store #1959 (collectively, "Wal-Mart" or

"Defendants"), seeking to recover for personal injuries she allegedly suffered when she slipped

and fell in Defendants' store in Middletown, New York on September 26, 2021.  ECF No. 1-1.

Currently before the Court is Defendants' motion for summary judgment.  ECF No. 22.  For the

reasons that follow, Defendants' motion is GRANTED.

**BACKGROUND**

**A.      Factual Background**

      The following facts are undisputed unless otherwise noted and are taken from

Defendants' Local Civil Rule 56.1 Statement, ECF No. 23 ("Defs.' 56.1 Statement"), Plaintiff's

Response to Defendants' Local Civil Rule 56.1 Statement, ECF No. 27 ("Pl.'s 56.1 Resp."),

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 17.

Defendants' Response to Plaintiff's Rule 56.1 Statement, ECF No. 31 ("Defs.' 56.1 Resp.")[2],

and the exhibits submitted by the parties.

On September 26, 2021, Plaintiff was shopping with her husband, Exequiel Ochoa, in a

Wal-Mart store located in Middletown, New York when she slipped and fell.  Defs.' 56.1

Statement ¶¶ 1, 2, 4; Pl.'s 56.1 Resp. ¶¶ 1, 2, 4; *see* ECF No. 22-1 (Affirmation of Thomas M.

O'Connor ("O'Connor Aff.")) Ex. B (Ochoa Deposition Transcript ("Ochoa Tr.")) at 12:20-13:5.

Upon entering the store, Plaintiff and Mr. Ochoa obtained a shopping cart and shopped for

approximately 15 minutes without incident.  Defs.' 56.1 Statement ¶ 2; Pl.'s 56.1 Resp. ¶ 2.

Eventually, the two made their way to the back of the store to pick up milk.  Defs.' 56.1

Statement ¶ 3; Pl.'s 56.1 Resp. ¶ 3.  Plaintiff slipped and fell to the floor; Mr. Ochoa was on her

left side at the time of the fall.  Defs.' 56.1 Statement ¶ 4; Pl.'s 56.1 Resp. ¶ 4.  After her fall,

Plaintiff observed water on the floor; in her deposition testimony, she described the quantity of

water in various different ways.[3]  Defs.' 56.1 Statement ¶ 5; Pl.'s 56.1 Resp. ¶ 5; Defs.' 56.1

Resp. ¶ 5.  Plaintiff did not see that water at any time prior to the accident, did not know how the

water came to be on the floor, and did not know how long the water had been on the floor prior

to the accident.  Defs.' 56.1 Statement ¶¶ 6-8; Pl.'s 56.1 Resp. ¶¶ 6-8.  Mr. Ochoa also did not

see anything on the floor before Plaintiff slipped, and did not know how the water came to be on

the ground before the accident.  Defs.' 56.1 Statement ¶¶ 15, 19; Pl.'s 56.1 Resp. ¶¶ 15, 19.  Mr.

---

[2] In Plaintiff's response to Defendants' Local Civil Rule 56.1 Statement, Plaintiff includes additional assertions to provide a "further response" beyond a simple admission or denial of Defendants' proffered undisputed facts.  *See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 5, 9, 11, 13, 18. These assertions, which are tantamount to a "counter-statement" of material facts from the Plaintiff, prompted Defendants to file their own response to the "counter-statement."  *See generally* Defs.' 56.1 Resp.

[3] The precise amount of amount of water that was present at the time of Plaintiff's slip and fall is not material to the Court's determination of this motion.

Ochoa observed clear water that did not have any track marks or footprints.  Defs.' 56.1 Statement ¶ 17; Pl.'s 56.1 Resp. ¶ 17.[4]

The accident area was near the self-service station where customers can fill large jugs of water.  Defs.' 56.1 Statement ¶ 10; Pl.'s 56.1 Resp. ¶ 10.  Plaintiff testified that the accident occurred "right by where they have like dishwashing stuff, the stuff to wash the dishes.  It's just slightly a little bit more before.  It literally happened right before that associates door which is right to the left of the water area with the cart."  O'Connor. Aff. Ex. A (Almodovar Deposition Transcript ("Pl. Tr.")) at 33:7-14.[5]  According to Mr. Ochoa, the accident happened not in an aisle, but rather "in the middle like where they have like the storage.  Like it's a back—by the water thing where you are able to fill up the jugs.  It's right next to there, and then the soap section right there . . . .  It's like in a big, open space.  And then next to that—in the middle of

---

[4] When asked at his deposition whether the "water pile [had] any debris within it," Mr. Ochoa answered "No.  I don't know."  Ochoa Tr. at 32:7-9; *see* Pl.'s 56.1 Resp. ¶ 17.  The Court interprets this testimony to mean that Mr. Ochoa did not recall whether there was any debris located within the water when he observed the water on the day of the accident.  In light of the other evidence in the record, this fact is not material to the Court's determination of the motion.

[5] Plaintiff's counsel interpreted the reference to "dishwashing stuff, the stuff to wash the dishes" to mean that there was an area of the store where Wal-Mart employees were washing dishes, and that the accident occurred near that location.  *See* Pl.'s 56.1 Resp. ¶ 11.  In contrast, Defendants' counsel asserted that "[t]here is no section of the store where Wal-Mart employees wash dishes in the store.  Rather, Plaintiff testified that her accident occurred near the area of the store where dishwashing liquid is sold."  Defs.' 56.1 Resp. ¶ 11.  This reading of Plaintiff's testimony is consistent with Mr. Ochoa's testimony, in which he stated that the accident occurred not near a dishwashing station, but near the "soap section."  Ochoa Dep. at 20:7-9.  Regardless, because there is no evidence in the record that the water that was on the floor at the time of the accident came from any purported dishwashing station, nor is there any evidence about the frequency with which employees were in the area of any such dishwashing station, then even viewing the evidence in the light most favorable to Plaintiff, whether there was or was not a dishwashing station at the Wal-Mart store is not material to the Court's determination of this motion.

that is the entrance where the workers go to the back and pick out the stuff." Ochoa Dep. at 19:25-20:13.

Regarding the source of the water on the floor, Mr. Ochoa testified: "After I seen her fall, yeah. I seen it was a lot of water because it came from like the jug. You know, where you fill up the water for the jugs? I guess somebody just like, you know—you see like the water pile coming from there. . . .  We seen the clothes got wet, and then we seen the—the—like where it was coming from." *Id.* at 30:17-31:8. When asked specifically, however, if he knew "how the water got on the ground," Mr. Ochoa testified that he did not. *Id.* at 32:14-16.

**B.    Procedural History**

Plaintiff initiated this action by filing a complaint in the Supreme Court of the State of New York, Orange County on August 25, 2023. ECF No. 1-1. On October 23, 2023, Defendants removed the matter to federal court based on diversity of citizenship between the parties pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446. ECF No. 1. Defendants filed the instant motion for summary judgment on October 28, 2024. ECF Nos. 22-24. On December 12, 2024, Plaintiff submitted her opposition to the motion. ECF Nos. 25-27. The motion was fully submitted on January 16, 2025 when Defendants filed their reply. ECF No. 30-31.

## LEGAL STANDARD

**A.    Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Dupree v. Younger*, 598 U.S. 729, 737 (2023). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York*

4

*City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (cleaned up); *see also Anderson*, 477 U.S. at 261 n.2.  A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (cleaned up).  Moreover, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015) (cleaned up).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (cleaned up).

### B.      Burden of Proof

While New York law governs the substantive slip-and-fall claim,[6] federal law applies to procedural aspects of the claim. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  "Because the moving party's burden of proof on a summary judgment motion is procedural, it is therefore governed by federal law." *Ricci v. Wal-Mart Stores E., LP*, No. 16-cv-6920 (JCM), 2018 WL 4308556, at *4 (S.D.N.Y. Sept. 10, 2018) (collecting cases).  "While in New York state court the [d]efendant would have to demonstrate it neither created the condition nor had notice of it, in

---

[6] Because jurisdiction over this matter is based upon the parties' diversity of citizenship and the alleged acts occurred in New York, New York law governs the substantive claim. *Moy v. Target Corp.*, 629 F. Supp. 3d 205, 209 n.6 (S.D.N.Y. 2022).

federal court the [d]efendant, as the moving party, may point to the absence of evidence that it caused or had notice of the hazard, and thereby shift the burden to the [p]laintiff to create an issue for trial through specific factual assertions." *Rodriguez v. Wal-Mart Stores E., LP*, No. 16-cv-2603 (CS), 2017 WL 4045745, at *3 (S.D.N.Y. Sept. 11, 2017); *accord Vasquez v. United States*, No. 14-cv-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016).  Put another way, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely by pointing to an absence of evidence to support an essential element of [plaintiff's] claim." *Vasquez*, 2016 WL 315879, at *5 (cleaned up).  If a defendant sustains that burden, the burden then shifts to the plaintiff to present evidence and demonstrate that a genuine issue of material fact exists for trial. *Celotex*, 477 U.S. at 322-24.

## DISCUSSION

### A.    Premises Liability

Plaintiff claims that Defendants' negligence caused her to sustain injuries on September 26, 2021 as a result of her slip and fall at the Middletown Wal-Mart store.  "To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.Y.S.2d 392, 392 (1985)).  In the context of premises liability and slip-and-fall cases, "the plaintiff must show that there was a dangerous or defective condition that caused the accident, and that the defendant either created the defective condition, or had actual or constructive notice thereof." *Moy*, 629 F. Supp. 3d at 210-211 (cleaned up). Under New York law, Plaintiff bears the burden of proof on the elements of her premises

liability claim.  *See Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d

Cir. 2008) (summary order).

Defendants do not dispute that there was a dangerous condition that caused Plaintiff to

fall to the ground.  *See generally* ECF No. 24 ("Defs. Mem.").  Plaintiff appears to focus

exclusively on whether Defendants had constructive notice of the condition, *see generally* ECF

No. 25 ("Pl.'s Mem."), but out of an abundance of caution, the Court will address each potential

theory of notice.

**B.**    **Creation of the Dangerous Condition**

"To establish that a defendant created a dangerous condition or defect, a plaintiff must

point to some affirmative act on the part of the defendant that is both deliberate and intentional."

*Leandro v. Wal-Mart Supercenter Store #2104*, No. 19-cv-2108 (JCM), 2021 WL 2742622, at *5

(S.D.N.Y. June 30, 2021) (cleaned up); *accord Cousin v. White Castle Sys., Inc.*, No. 06-cv-6335

(JMA), 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009) (cleaned up).  Although circumstantial

evidence on this point may be sufficient to defeat a motion for summary judgment if it supports

the inference that a defendant created the condition through its own affirmative acts, "[a]

plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding

how a defendant may have created a particular hazard."  *Decker v. Middletown Walmart*

*Supercenter Store*, No. 15-cv-2886, 2017 WL 568761 (JCM), at *5 (S.D.N.Y. Feb. 10, 2017)

(cleaned up); *see Morgan v. Wal-Mart Stores E., LP*, No. 20-cv-9246 (AEK), 2023 WL

5984034, at *5 (S.D.N.Y. Sept. 14, 2023).

Plaintiff has not come forward with any evidence to demonstrate that the water condition

at the Middletown Wal-Mart store was the result of an affirmative act by Wal-Mart or any Wal-

Mart employee.  Indeed, there is no specific evidence in the record of how the water ended up on

the floor at all.  Plaintiff points to the deposition testimony of Mr. Ochoa, who suggested at one point that the water seemed to have come from a jug in or around the water filling station at the store; a short time later, however, Mr. Ochoa specifically testified that he did not know how the water came to be on the ground.  *See* Ochoa Dep. at 30:17-32:16.  This is not sufficient to establish the source of the water condition, let alone that the condition was caused by an affirmative act by Wal-Mart.

To the extent Plaintiff's contends that Defendants created the water condition simply by having a self-service water filling station (or a dishwashing station) in the store—even without evidence that the water originated from such a station—that argument is unavailing.  *See Cousin*, 2009 WL 1955555, at *6 ("[T]he mere presence of a self-service beverage station in the restaurant, by itself, does not tend to prove that defendant created the hazard."); *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998) ("The mere fact that a puddle of liquid originated from store merchandise does not establish the creation of the puddle, because the puddle is not a direct consequence of the defendant's passive activity of providing merchandise for sale."); *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998) (fact that hotel supplied coffee "does not establish the creation of the puddle, because the puddle is not a direct consequence of the defendant's passive activity of providing guests with coffee").

"On the record in this case it remains a mystery how the water ended up where it did," *Dranoff v. Sam's E., Inc.*, No. 16-cv-6482 (CS), 2017 WL 1437207, at *5 (S.D.N.Y. Apr. 20, 2017), and Plaintiff has not pointed to evidence of any affirmative act by Defendants that would suggest that Defendants created the hazard.  Accordingly, Defendants are entitled to summary judgment on the issue of whether they created the dangerous condition.

### C.    Actual Notice of the Dangerous Condition

To prove that Defendants had actual notice of a dangerous condition, a plaintiff "must present proof that defendants were, in fact, aware of the dangerous condition." *Ghali v. Wal-Mart Stores E., LP*, No. 18-cv-2495 (CS), 2019 WL 1745704, at *6 (S.D.N.Y. Apr. 18, 2019) (cleaned up). "A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." *Cousin*, 2009 WL 1955555, at *7 (cleaned up). Courts have granted summary judgment for defendants where there was no evidence that the defendants' employees had observed the hazard prior to the plaintiff's fall or that the defendants had received reports of the dangerous condition. *See Ricci*, 2018 WL 4308556, at *6.

Here, as discussed in Discussion Section B, *supra*, there is no evidence that Defendants created the water condition at issue. Moreover, Plaintiff has not offered any evidence that Defendants were aware of the condition—there is no evidence in the record that any Wal-Mart employees saw the water on the floor prior to Plaintiff's fall, nor is there evidence that Defendants received any complaints about water on the floor prior to the fall. Accordingly, because there is no evidence in the record that Defendants had actual notice of the water on the floor prior to Plaintiff's fall, Defendants are entitled to summary judgment on the issue of whether they had actual notice of the dangerous condition.

### D.    Constructive Notice of the Dangerous Condition

"To prove liability based on constructive notice, the danger must have been visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." *Nussbaum v. Metro-North Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (summary order) (cleaned up). Plaintiff argues that Defendants had

constructive notice of the water condition because it was located in an area where Defendants'
employees would and should have seen it, and because the condition would have been remedied
had Defendants properly inspected the area where the water was located.  Pl.'s Mem. at 11-21.
Defendants contend that summary judgment is appropriate because, among other things, there is
no evidence in the record to support that the water condition was visible and apparent, no
evidence that the water was in an area frequented by Defendants' employees, and no evidence
regarding any purportedly deficient inspection of the store.  *See* Defs. Mem. at 6-11; ECF No. 30
("Defs. Reply") at 2-4.

### 1.    Constructive Notice—Visible and Apparent

Plaintiff has not raised a triable issue of fact as to whether the water condition was visible
and apparent.  "Courts in this Circuit routinely grant summary judgment in [ ] slip-and-fall cases
on the ground that the condition was not visible and apparent when a plaintiff did not see the
condition prior to the fall and did not submit other evidence that the condition was visible."
*Moy*, 629 F. Supp. 3d at 210.

Here, the evidence in the record demonstrates that the water condition was neither visible
nor apparent prior to Plaintiff's fall.  There is no dispute that neither Plaintiff nor Mr. Ochoa saw
the water until Plaintiff was on the ground, and Plaintiff cannot point to anyone who did.  Defs.'
56.1 Statement ¶¶ 6, 15; Pl.'s 56.1 Resp. ¶¶ 6, 15; *see Decker*, 2017 WL 568761, at *7 (S.D.N.Y.
Feb. 10, 2017) (explaining that "other courts have found insufficient evidence to raise a triable
issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see
the condition prior to a fall, or offer evidence that others saw the condition prior to the fall").
That both Plaintiff and Mr. Ochoa observed the water after Plaintiff's fall is not relevant for
purposes of assessing whether the dangerous condition was visible and apparent, because "the

legally meaningful time to notice a defective condition is *before* an accident, not after," *Henry v. Target Corp.*, No. 16-cv-8416 (JPO), 2018 WL 3559084, at \*5 (S.D.N.Y. July 24, 2018) (emphasis in original); *see also Melanson-Olimpio v. Wal-Mart Stores E., LP*, No. 16-cv-8735 (NSR), 2019 WL 1060625, at \*5 (S.D.N.Y. Mar. 6, 2019) ("Observations after an accident occurs are not evidence that a condition was visible and apparent prior to the accident.").

Plaintiff makes much of the fact that the water condition was located near a door that Plaintiff and Mr. Ochoa believed to be used by Wal-Mart employees.  *See* Pl. Tr. at 33:7-14 (explaining that the accident happened "right before that associates door"); Ochoa Dep. at 19:25-20:13 (explaining that the accident took place in an open space, in the middle of which was an "entrance where the workers go to the back and pick out the stuff").  Based on this limited testimony, Plaintiff contends that the water condition was in a location where "Defendants' workers went to and from throughout a shift" and that Wal-Mart employees were "traversing the area frequently to enter and when exiting the designated workers' door"; Plaintiff maintains that it therefore would be reasonable to infer that Wal-Mart employees would have and should have seen the water on the floor.  Pl.'s Mem. at 13, 14.  But there is no evidence in the record to indicate that Wal-Mart employees went in and out of this door "throughout a shift" or that employees were "traversing the area frequently."  There is no testimony from any Wal-Mart employee or corporate representative, for example, as to how many employees were working in the Middletown store at or around the time of the accident, and no testimony about the purpose of this door or how often Wal-Mart employees would enter or exit the door during a typical shift.

Plaintiff cites to *Figueroa v. Pathmark Stores, Incorporated*, No. 02-cv-4992 (THK), 2004 WL 74261, at \*4 (S.D.N.Y. Jan. 15, 2004), for the proposition that the alleged location of a hazardous condition in a "high traffic and presumably constantly staffed checkout area" could

allow a jury to "properly infer that it should not have taken long for [d]efendant's employees to discover it." *See* Pl.'s Mem. at 13. Here, however, there is nothing in the record that would allow a jury to infer or "presume" that the area where the accident occurred was a "high traffic" location that was "constantly staffed"—indeed, there is no evidence at all about how frequently Defendants' employees would have had occasion to be in this area of the store. Moreover, there were numerous other indications in *Figueroa*—a trail of pink liquid leading from the front of the store through the checkout area with shopping cart tracks and footprints through it, and evidence that the liquid had begun to change color and consistency in some places—that allowed for a reasonable inference that the hazardous condition had been in place for some length of time, and none of those factors are present here. *See* Discussion Section D.2, *infra Salazar v. Wal-Mart Stores E., LP*, No. 22-cv-6991 (VR), 2024 WL 1995240, at *5 (S.D.N.Y. May 6, 2024) ("there is no evidence akin to muddied shopping cart tracks or footprints in the water that would support an inference that it should not have taken long for Wal-Mart employees to discover the water and clean it up").

And even if there were specific evidence—which there is not—that Wal-Mart employees were in the vicinity of the spill and did not react to it, courts have concluded that such evidence, without more, counsels against finding that the condition was visible and apparent. *See, e.g.*, *Cooper v. Wal-Mart Stores, Inc.*, No. 24-cv-205 (JCM), 2025 WL 1617071, at *9 (S.D.N.Y. June 6, 2025); *Demelio v. Wal-Mart Stores E., LP*, No. 21-cv-1900 (AEK), 2023 WL 2480192, at *5 (S.D.N.Y. Mar. 13, 2023); *Ortiz v. Wal-Mart Stores E., LP*, No. 17-cv-945 (NSR), 2019 WL 1171566, at *5 (S.D.N.Y. March 13, 2019).

For all of these reasons, Plaintiff has failed to raise a genuine issue of material fact as to whether the water condition was visible and apparent prior to the September 26, 2021 accident, and therefore cannot establish Defendants' liability based on constructive notice.

### 2.    Constructive Notice—Length of Time

Even if Plaintiff had raised a triable issue of fact as to the question of whether the water condition was visible and apparent—which she did not—Defendants would be entitled to summary judgment because Plaintiff has not shown that the condition had existed for a sufficient length of time to provide constructive notice to Wal-Mart.  "Although constructive notice can be inferred based on the circumstances surrounding the injury and the condition of the premises, in order to survive summary judgment, Plaintiff must provide *some basis* for an inference that the spill was there long enough to blame [d]efendant for the accident."  *Moy*, 629 F. Supp. 3d at *211 (emphasis in original) (cleaned up).  While Plaintiff is not required to know precisely how long the condition existed, she nevertheless "must produce some form of evidence from which a reasonable jury could infer that it was a long enough period to permit [d]efendant's employees to notice and remedy it."  *Rodriguez*, 2017 WL 4045745, at *5 n.5.

Plaintiff offers no specific evidence as to how long the water condition was present on the floor, and no evidence from which a reasonable factfinder could infer that the water was present for enough time that Defendants should have both discovered it and remedied it prior to the accident.  As an initial matter, there was no evidence of footprints or track marks from shopping carts in the water on the floor, which could potentially have suggested that the water had been there for some period of time.  Mr. Ochoa testified that he observed clear water that did not have any track marks or footprints.  Defs.' 56.1 Statement ¶ 17; Pl.'s 56.1 Resp. ¶ 17.

To the extent Plaintiff is attempting to assert that the size of the water condition is evidence that the water was there for an extended period of time, that contention is without merit. As other courts have observed, "[t]he size of a puddle evidences the amount of fluid spilled, but provides no information concerning the duration of the puddle's existence; a quart of water spilled on the floor will result in a large puddle immediately after the spill as well as one-half hour after the spill." *Rivera v. Target Dep't Store, Inc.*, No. 15-cv-7846 (HBP), 2017 WL 2709745, at *8 (S.D.N.Y. June 22, 2017); *see Strass v. Costco Wholesale Corp.,* No. 14-cv-6924 (PKC) (VMS), 2016 WL 3448578, at *7 (E.D.N.Y. June 17, 2016) (noting that "circumstantial evidence that [plaintiff] slipped on a large puddle, without more, does not support an inference that the puddle had existed for enough time to allow a [store] employee to discover the spill and clean it up"). Ultimately, the deposition testimony of Plaintiff and Mr. Ochoa—including Plaintiff's various assertions about the amount of water on the floor—do not provide any insight into how long the water condition was present prior to the accident.

The proximity of the water condition to the door that Plaintiff and Mr. Ochoa believed to be used by Wal-Mart employees also does not give rise to a triable issue of fact as to how long the water was on the floor. As previously discussed, the evidence in the record does not demonstrate how often Wal-Mart employees would have been in the vicinity of the area of the accident, but even if it did, "[t]he mere existence of a defendant's agent in the area of an accident is insufficient to create a genuine issue of material fact regarding how long a dangerous condition existed."[7] *Leandro*, 2021 WL 2742622, at *11 (cleaned up) (collecting cases); *see*

---

[7] Moreover, this argument relies on the incorrect premise that the spill was visible and apparent, and likewise fails for that reason. *See Dranoff,* 2017 WL 1437207, at *6 ("[E]ven if one of [d]efendant's employees did indeed walk by the flower display moments before the fall, because there is no evidence that the water was visible and apparent, the Court cannot infer that [d]efendant had constructive notice of the dangerous condition.").

*also Watts v. Wal-Mart Stores E., LP*, No. 16-cv-4411 (KMK), 2018 WL 1626169, at *7 n.12 (S.D.N.Y. Mar. 29, 2018) (finding employees' presence in area of accident to be "inconclusive on the question of the length of time the substance was on the floor and not circumstantial evidence that supports an inference in support of [p]laintiff's position"); *Rodriguez*, 2017 WL 4045745, at *5 (finding that store employee's presence near accident site minutes before the plaintiff fell did not amount to constructive notice where "there is no evidence . . . that there was liquid on the floor when she passed the relevant area . . . and it is entirely feasible that the water was deposited by one of the numerous people . . . who passed by after she left the area").

Plaintiff has not offered any evidence from which a reasonable jury could infer that the condition that caused Plaintiff's fall existed for a sufficient length of time prior to the accident to permit Defendants' employees to discover and remedy it. As such, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants had constructive notice of the condition for this independent reason.[8]

### 3.    Plaintiff's "Failure to Inspect" Theory

Plaintiff attempts to establish that Defendants had constructive notice of the water condition by advancing a "failure to inspect" theory—*i.e.*, that the hazardous condition would have been discovered through a reasonable inspection of the premises, and that Defendants failed to conduct such an inspection. *See* Pl.'s Mem. at 14-21.

---

[8] Almost as an aside, Plaintiff suggests that permanent "wet floor signs" should have been placed near the water filling station because of the purported risk of wet floors in proximity to this type of store feature. *See* Pl.'s Mem. at 7, 22. But there is no evidence in the record that the water condition that led to Plaintiff's fall was the result of proximity to the water filling station, let alone any evidence that the floor in this area of the store was frequently wet for any reason. Accordingly, there is no basis from which to infer that Defendants had any sort of heightened obligation to provide warnings to customers of potential wet floor conditions in the area where Plaintiff fell. Tellingly, Plaintiff does not even attempt to construct a legal argument regarding this contention, and does not cite any case law to support this passing idea.

"Courts differ on whether a failure to inspect is a means for establishing constructive notice or a separate obligation that displaces the need for notice when imposing premises liability." *Wilson v. Wal-Mart Stores E., LP*, No. 16-cv-8637 (JCM), 2018 WL 4473342, at *8 (S.D.N.Y. Sept. 18, 2018) (cleaned up).  "Either way, under a 'failure to inspect' theory, Plaintiff must still come forward with evidence showing that a reasonable inspection would have revealed the condition." *Id.*  As Plaintiff appears to acknowledge in her briefing, "the burden is on the [P]laintiff to raise a triable issue of fact as to the reasonableness of an inspection.  Defendants are not obliged to present evidence affirmatively establishing that they conducted a reasonable inspection."  Pl.'s Mem. at 20; *see Wilson*, 2018 WL 4473342, at *8 ("the federal standard requires Plaintiff to set forth evidence of [d]efendant's alleged failure"); *Cooper*, 2025 WL 1617071, at *8 ("Plaintiff must come forward with evidence showing that a reasonable inspection would have revealed the condition." (cleaned up)).

While Plaintiff at times seems to attempt to shift the burden of proof to Defendants, *see* Pl.'s Mem. at 15, it is Plaintiff's obligation to present evidence to establish a "failure to inspect" here, and she has entirely failed to do so.  First, Plaintiff has not provided evidence that there was a store policy or rule that required inspections to be done at specific intervals or on a regular schedule, or that Defendants failed to conduct any required inspections.  *See Cooper*, 2025 WL 1617071, at *8.  Second, because there is no evidence that the water condition was visible and apparent, and no evidence as to how long the condition was present, it is not possible to infer that even a reasonable inspection would have discovered the condition and enabled Defendants to remedy it.  *See Taylor v. Manheim Mktg. Inc.*, No. 15-cv-1950 (PKC) (RER), 2018 WL 611628, at *2 (E.D.N.Y. Jan. 29, 2018) ("[t]o prevail on a failure to inspect theory, a plaintiff must still demonstrate not only that the defendant breached its duty to inspect, but that a reasonable

inspection would have prevented the injury.").  Accordingly, Plaintiff cannot establish that Defendants had constructive notice of the water condition through a "failure to inspect" theory.

\* \* \* \* \* \* \* \* \* \*

Because Plaintiff has failed to come forward with evidence to show that the water condition was visible and apparent, that it had been present for a sufficient length of time, or that Defendants failed to inspect the premises, Defendants are entitled to summary judgment on the issue of whether they had constructive notice of the dangerous condition on September 26, 2021.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 22) is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, enter judgment in favor of Defendants, and close the case.

Dated:  September 26, 2025
        White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge